No. 6.—John B. Fitts, and others, plaintiff in error, *vs.* Herschel V. Johnson, Governor, for use &c., defendant in error.

[1.] Evidence was rejected that was properly admissible, but if it had been admitted, it ought not to have changed the verdict.   No motion was made for a new trial.

*Held,* That the rejection of the evidence, was not a sufficient cause for a new trial.

[2.] If the Sheriff pay over money coming to the defendant in the *fi. fas.* to some debt of the defendant's which is not entitled to the money: yet the Sheriff will be protected in the act, if he so paid the money, by the *order* of the defendant.

Debt on Sheriff's Bond, from Putnam Superior Court. Tried before Judge Hardeman, March Term, 1857.

This was an action of debt brought for the use of William G. Lee, on the official bond of the Sheriff of Putnam County, against the Sheriff and his securities, for failing to pay over to Lee the balance in his hands, amounting to one thousand one hundred and thirty-five dollars and ninety cents, arising from the sale of negroes sold under general executions against Lee; and which balance it was alleged remained, after satisfying said executions.

The plaintiff offered in evidence the Sheriff's official bond.

He next offered a *rule nisi* against the Sheriff, reciting, that he having raised from sale of Lee's property, fifteen hundred dollars, and after satisfying the executions levied upon, that there will remain in his hands a balance, and ordering him to show cause why the same should not be paid to Lee; and the rule absolute at the same term of the Court, March, 1855, ordering the Sheriff to pay over to him the sum of one thousand one hundred and thirty-five dollars and ninety cents, as said balance.

Here the plaintiff closed.

Defendant then offered in evidence sundry *fi. fas.*, which

were in his hands against Lee, at the time of the sale of the property, amounting to five hundred and sixty dollars.

*Lewis P. Harwell* testified, That on the evening of the sale of Lee's negroes by the Sheriff, 6th June, 1854, Lee directed the Sheriff to pay out of the proceeds of the sale of his property, his note to the Branch Bank at Eatonton, for two hundred and nineteen dollars, endorsed by Scarsbrook; and that Fitts did pay it. Lee was drunk at the time, but not so much so as not to know what he was about.

It was admitted by defendants, that on the day of sale, William H. Scarsbrook gave notice before the sale, that he held a mortgage on the property.

Harwell further testified, that he did not know whether Fitts heard the notice given by Scarsbrook or not, but that he was present.

The Court then admitted the Bank note in evidence, saying that it would charge the jury as to that note, as the law and facts of the case required. Defendant's counsel then offered to introduce two mortgages on said negroes, and *fi. fas.* thereon : one from Lee to Elmore Calloway and Lewis P. Harwell for the sum of seven hundred and fifty dollars, besides interest and cost; the other from Lee to Lewis P. Harwell for the sum of two hundred and forty-eight dollars and seventy-seven cents, besides interest and cost, and which *fi. fas.* were in the Sheriff's hands on the day of sale, and both receipted in full to the Sheriff by the respective parties on the day of the sale of the said negroes; the aggregate of said receipts amounting to one thousand and thirty dollars and eighty-seven cents.

Before receiving these papers in evidence, Lewis P. Harwell was again examined, who stated, that Fitts the Sheriff had recovered back from Calloway and himself the amounts he had paid and allowed to them on their mortgage *fi. fas.* These amounts were paid in settlement by the Sheriff, they being the purchasers of the negroes at the Sheriff's sale, on the first Tuesday in June, 1854. That notice of said mort-

gages was given at the sale, and that the negroes were sold subject to the mortgages; that he did not know that the Sheriff knew that the notice was given, but he was present and as Sheriff sold the negroes.

The Court ruled out the mortgage *fi. fas.* and the oral testimony of Harwell, which however was before the Court and jury, and counsel for defendants excepted.

*Wm. C. Davis* testified, that on the day of sale, after the negroes were sold, he went to where the Sheriff was settling with Calloway and Harwell, and understanding that they were about to apply the proceeds of the sale to the mortgage *fi. fas.* said that it was wrong, as the property was not subject to the mortgages; when Harwell said, "say nothing about it, and your execution shall be paid."

Defendants here closed.

The Court charged the jury, among other things, that in reference to the note to the Bank, if they believed that Fitts knew of the notice of the encumbrance of the mortgage to Scarsbrook, and that said mortgage was given to indemnify him against his indorsement on said note, then the jury should not allow the same as a credit to the Sheriff in their verdict; but if they believed from the evidence that Fitts did not know of the proclamation of the lien of Scarsbrook's mortgage at or before the sale, then they should allow it as a credit to defendants—it being admitted by defendant's attorney that notice of the mortgage was given.

To which charge defendants counsel excepted.

The jury found for the plaintiff the sum of eleven hundred and one dollars and twenty-six cents.

Whereupon counsel for defendants tender their bill of exceptions, and assigned the said rulings and charge, as error.

John W. Hudson, for plaintiff in error.

F. H. Cone, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

Lee in his declaration alleges, that Fitts, as Sheriff, sold certain of his, Lee's negroes, to satisfy several general *fi. fas.* against him; That the negroes sold for more than enough to satisfy the *fi. fas.*; and that Fitts refuses to pay over to him the surplus.

The defence of the Sheriff (and his sureties) seems to be, that he paid this surplus to certain mortgages on the negroes, made by Lee, viz: a mortgage held by Calloway and Harwell; a mortgage held by Harwell; and a mortgage held by Scarsbrook; and that he did so by the direction of Lee.

To make out this defence, the defendants offered as evidence, the first two of the aforesaid mortgages, together with the judgments of foreclosure on them, the *fi. fas.* issued from those judgments, and the receipts in full, given to the Sheriff by the mortgagees; and also offered as evidence the testimony of Harwell, to the effect, that Fitts, the Sheriff, had recovered back the money paid or allowed by him to the said mortgagees, and for which they had given him the said receipts: they also offered evidence to show, that Lee was willing that the mortgagees should be paid out of the money raised by the sale of the negroes.

The Court rejected the whole of this evidence, and that is excepted to.

It is to be remembered, that the negroes were sold subject to the mortgages.

Was the foregoing evidence admissible? We think that it was. A part of it went to show, that the Sheriff paid the money to the mortgagees in obedience to instructions proceeding from Lee himself, the owner of the money. This part, therefore, would have been in support of the defence to the action.

Another part of the evidence, however, went to show that if it was true, that the Sheriff had paid the money on the

mortgages, it was equally true, that he had afterwards recov ered it back.

Now when he had recovered the money back, he held it, we may presume just as he had held it before he paid it over to the mortgagees, and he had held it before he had paid it over to the mortgagees, as the money of Lee, the negroes having been sold subject to the mortgages. The recovery back was evidence, that for some reason, the payment of the money to the mortgagees was an improper payment, and therefore, was evidence, that the money still, in law, belonged to Lee.

This being so, the part of the evidence aforesaid that showed that the Sheriff had recovered back the money, neutralized the part that showed that he had paid the money on the mortgages under the instructions of Lee.

If therefore, the evidence in both its parts as offered, had been received, it could not have changed the verdict.

This being so, a new trial ought not to be granted, although, it is true, that the rejected evidence was admissible; for a new trial, with that evidence in, ought not to result in a different verdict.

The new trial Act 1854, does not apply, as no motion was made for a new trial.

[1.] We cannot, then, hold the first exception good.

In relation to the "Bank note," this may be said :

It seems, that there was a note of Lee's in Bank, on which Scarsbrook was an endorser; that Scarsbook held a mortgage on the negroes aforesaid, for his indemnity as such endorser, and that the negroes were sold subject to the mortgage. But it also appears, that Lee directed the Sheriff, to apply a part of the money arising from the sale of the negroes, to the payment of this note, and that the Sheriff accordingly, did so apply a part of the money; and it does not appear, that the Sheriff ever recovered back *this* part.

[2.] Now the money thus paid away by the Sheriff, belonged to Lee, and Lee might do with it whatever he pleased. He might, therefore, order the Sheriff to pay it on the note,

notwithstanding that the note might not be entitled to it, and if he did, the Sheriff would be justified in obeying the order. And no action can lie against a man for doing what he is justified in doing. Unless, therefore, the Sheriff had recovered back this money, as he had that which he paid to the two mortgagees, there could be no action against him for this money.

Now, the charge of the Court in reference to this note, amounts to this, that the Sheriff was liable, whether it was by the order of Lee the owner of this money or not, that he had paid away the money on the note, provided he knew of Scarsbrook's mortgage.

This charge, therefore, we think was wrong.

And if wrong, the error was manifestly such as to require a new trial.

Accordingly a new trial is ordered.